## JOHN C. PANGBORN v. JOSEPH RUEMENAPP.

*Sale—Estoppel—Fraud—Rescission—Replevin—Demand.*

1. Where the owner of property stands by and permits another to sell it as his own, he is estopped from questioning his authority to make the sales, but he may take the bargain as made, and rescind the same for fraud, if any was perpetrated by the vendee.

2. Although a sale of property may be induced by fraud, the contract is not therefore void, but only voidable at the option of the seller. The title passes to the vendee, subject to the right

of the vendor, upon discovering the fraud, to elect whether he will rescind the contract by returning or offering to return whatever of value he may have received and reclaim his property, or whether he will retain such consideration, and treat the bargain as subsisting; and until such election is made the title to the property remains in the purchaser, and a demand is necessary before bringing replevin therefor.

3. Where, on a sale induced by the fraudulent representations of the vendee, the vendor receives a note which is found to be *worthless*, bringing a suit for the recovery of the property is a sufficient disaffirmance of the contract of sale, and a tender of the note upon the trial is sufficient.

Error to Huron. (Beach, J.)    Argued April 5, 1889. Decided April 19, 1889.

Replevin.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*Elbridge F. Bacon,* for appellant, contended:

1. Defendant came lawfully into the possession of the property, under contract relations with the ostensible owner, and he was entitled to a demand for the property before it could be replevied; citing *Adams v. Wood,* 51 Mich. 411; *Campbell v. Quackenbush,* 33 Id. 287.

2. The note given for the purchase price of the horse was negotiable paper, and had been indorsed by the payee to the plaintiff, and, in order to rescind the contract, should have been returned or tendered to the defendant before the suit was commenced; citing 2 Pars. Cont. 780; *Wilbur v. Flood,* 16 Mich. 40; *Adams v. Wood,* 51 Id. 411; *Moriarty v. Stofferan,* 89 Ill. 528; *Doan v. Lockwood,* 115 Id. 490; *Haase v. Mitchell,* 58 Ind. 213; *Parrish v. Thurston,* 87 Id. 437; *Ins. Co. v. Howard,* 111 Id. 544; *Thayer v. Turner,* 49 Mass. 550; *Powers v. Benedict,* 88 N. Y. 605; *Gould v. Bank,* 21 Hun, 293, 99 N. Y. 333.

*Hiram L. Chipman (Q. A. Smith,* of counsel), for plaintiff, contended:

1. After the horse was replevied, and before the return-day of the writ, the defendant demanded the note of plaintiff's attorney, and it was given to him, and he used it on the trial in his own behalf. It is sufficient if the note is tendered before or at the trial; citing Cooley, Torts, 504; *Coghill v. Boring,* 15 Cal. 213; *Thurston v. Blanchard,* 22 Pick. 18; *Fraschieris v. Henriques,* 36 Barb. 276; *Pequeno v. Taylor,* 38 Id. 375.

2. Under plaintiff's theory of the case, when the property or note was received was absolutely worthless, it was not necessary to return it; citing *Babcock v. Case*, 61 Penn. St. 427; *Dayton v. Monroe*, 47 Mich. 194.

3. No demand was necessary before bringing suit. Plaintiff's theory is that the original taking was tortious, the representations made by the defendant were false, and the note was worthless; citing Morris, Repl. 87; *Thurston v. Blanchard*, 22 Pick. 18; *Thayer v. Turner*, 49 Mass. 550; *Leroy v. Railway*, 18 Mich. 234; *Whitney v. McConnell*, 29 Id. 11; *Carl v. McGonigal*, 58 Id. 567.

MORSE, J. This is an action in replevin, brought in the circuit court for the county of Huron, to recover the possession of a horse. Verdict and judgment for plaintiff.

The undisputed facts are as follows: Henry Pangborn, a brother of the plaintiff, held an auction sale of property belonging to Henry in November, 1887. Plaintiff took his horse up to the sale, but he was not sold at auction. After the auction on the same day Henry Pangborn sold the horse as his own to the defendant, taking in payment therefor a promissory note for $150, dated November 8, 1887, and payable in one year, with interest at 8 per cent. until paid. The note was signed by the defendant as maker, and by William Brugman and George Duffern as sureties in fact, though as the note appears upon its face all three are makers. Henry Pangborn indorsed the note over to his brother, as it was made payable to his order. The terms of the sale at the auction were 12 months' credit on good approved notes. Defendant had no knowledge that plaintiff owned the horse until after it was replevied. No demand was ever made upon him for the horse, nor was the note tendered to him before the service of the writ. It is stated in the brief of the plaintiff that before the trial of the cause the defendant demanded the note of plaintiff, and

it was given up to him. No such fact appears in the record. It seems, however, that on the trial the defendant had the note in his possession, and offered it in evidence.

The dispute as to the facts in the case is this: The plaintiff claims that defendant represented to his brother, Henry, who was selling the horse, that William Brugman, who signed the note with defendant, owned 120 acres of land well improved and unincumbered, and that Henry sold the horse and took the note relying on this representation. The defendant denies that any such representation was made. He testifies that Brugman told Henry Pangborn that he had 120 acres of land, but that he did not tell him there was no incumbrance upon it. Brugman also testifies that they both told Henry Pangborn that, if he thought the note was not good, he could go and ask Major Cooper about it, and if he was not satisfied they would give him another surety upon it. Plaintiff testified that he could not dispose of the note, and that defendant said in Chipman's office, after the horse was replevied, that the note was "no good." Defendant denied making this statement.

It was conceded on the trial that William Brugman was the owner of 120 acres of land in the township of Sherman, Huron county, and that there was a mortgage upon it dated February 28, 1884, for $575. Brugman testified that this land was worth $2,000, and that he had upwards of $500 personal property clear of mortgages, and that he owed besides the mortgage and this note but $65. George Duffern corroborated Brugman as to the value of his land and personal property.

The court instructed the jury that, if they found the representation to have been made as claimed by plaintiff, and the representation was not true, and the plaintiff had been injured by such false representation that the

land was not incumbered,—"that is, that the note given is not good and collectible, or that the chances are unfavorable for collection,"—the plaintiff could recover, and no demand was necessary before suit brought.

"The plaintiff was dealing for a good piece of paper, and if you find that the representations were made, and that they were false, and that the note in consequence was not good or ample security for the payment of the purchase price of the horse, you will find for the plaintiff."

The defendant objected to the statement of Henry Pangborn as to what was done at the sale, and what was said by him and the defendant, and whom he was acting for in the sale of the horse. We think the evidence was competent, and that the plaintiff can step into the shoes of Henry as far as the sale is concerned, and rely upon the representations made, if any, by the defendant in regard to the note, and the financial ability of Brugman.

He would be estopped from questioning the authority of Henry to make the sale, and would be bound by it the same as Henry, because he stood by and permitted Henry to sell the horse as his own; but he is not debarred by this act from taking the bargain as Henry made it, and rescinding the same for fraud, if any was perpetrated by the defendant.

But a very serious question arises upon this record as to the right of the plaintiff to take this horse upon replevin without ever disclosing his ownership to the defendant, or demanding the horse of him, and without tendering back to defendant the note, or demanding pay or additional security upon it. This suit was commenced November 11, 1887, three days after the note was given. The only evidence to show that the note was worthless, which the plaintiff acted upon before bringing suit, was that he was unable to dispose of it within those three days; and the only testimony in addition to this upon the

trial was that the defendant said, after the suit was brought, that the note was "no good," which the defendant denies saying; and that Ruemenapp and Duffern had no property not exempt from execution. The undisputed testimony of Brugman and Duffern showed that the former had plenty of property out of which the amount of the note could have been made, if it had then been due. The note was not worthless. It evidently had some value, and, as far as the plaintiff was concerned, it was indorsed by his brother Henry, whose financial condition does not appear in the record.

The counsel for plaintiff argues upon the supposition that the note was worthless, and therefore a tender of the same on the trial would have been sufficient under the authorities in this State (see *Dayton v. Monroe,* 47 Mich. 194, 10 N. W. Rep. 196; *Stubly v. Beachboard,* 68 Id. 401, 36 N. W. Rep. 192); and that the defendant had the note upon the trial, and actually received it before the trial, but after the writ of replevin was served. But the court did not treat the note as worthless, as it could not well be so treated in the light of the testimony in the case. The jury were instructed that if they found the chances unfavorable for collection they must find for the plaintiff if the false representations were made as claimed.

Although a sale of property may be induced by fraud, the contract is not therefore void, but only voidable, at the option of the seller. In this case the only false representation established was that the land of Brugman was not incumbered, when in fact there was a mortgage of $575 upon it. It cannot be doubted that, notwithstanding this false representation, the plaintiff would have had the right to have ratified the sale, and collected the note, had he desired to do so. If the defendant had exchanged property for the horse in question, it is clear that the

74 MICH.—37.

plaintiff could not have replevied the horse without a tender back to the defendant of such property. If the plaintiff elects to rescind the contract, he must do so altogether. He cannot retain what he has received, and claim what he exchanged for it also. In such a contract, the title to the property passes to the vendee, subject to the right of the vendor, upon discovering the fraud, to elect whether he will rescind the contract by returning or offering to return whatever of value he may have received and reclaim his property, or whether he will retain the consideration, and treat the bargain as subsisting. Until he makes such election the contract continues, and the title to the property remains in the purchaser. *Wilbur v. Flood,* 16 Mich. 40; *Moriarty v. Stofferan,* 89 Ill. 528; *Thompson v. Peck,* 115 Ind. 512 (18 N. E. Rep. 16); *Powers v. Benedict,* 88 N. Y. 605; *Farwell v. Hanchett,* 120 Ill. 573 (9 N. E. Rep. 58); Wells, Rep. § 331; 2 Pars. Cont. 780. If the vendor has received nothing of value, there is nothing to return, and the bringing of the suit is a sufficient disaffirmance of the contract. If, therefore, the note taken upon such a sale is worthless, a tender upon the trial in court has been held sufficient. But in this case I think the defendant was entitled to have a tender of the note made to him, and a demand for the horse, before replevin could be maintained. There is no good reason why he should be put to the expense of costs in the issuing and service of a writ of replevin by one who was a stranger to him as far as this sale was concerned, without an opportunity to make the note good, to pay it, or to deliver up the horse, and take his note back, without suit.

The judgment of the court below will be reversed, and a new trial granted, with costs to the defendant.

The other Justices concurred.