ANDERSON *v.* FRISCHKORN REAL ESTATE CO.

1. CONTRACTS—RESCISSION—FRAUD IN SALE OF CORPORATE STOCK—
   TENDER.
   > In order to maintain action for money paid for shares of cor-
   > porate stock on theory that contract had been rescinded for
   > fraud, it was upon plaintiff before suit to restore, or offer to
   > restore, whatever of value he had received, but if what he
   > received had no value failure to restore it worked no prejudice.

2. SAME—"VALUE" AND "MARKET VALUE" USED INTERCHANGE-
   ABLY.
   > Showing that shares of corporate stock had no market value
   > was properly accepted by trial judge as showing that they had
   > no value; "value" and "market value" being commonly used
   > interchangeably as equivalents of actual value.

3. SAME—RESCISSION—TENDER.
   > Where corporate stock had no market value at time of bringing
   > action for its fraudulent sale on theory of rescission, there was
   > nothing of value to return, and bringing action was sufficient
   > rescission.

4. NEW TRIAL—MATERIAL WITNESS—ABSENT WITNESS.
   > Motion for new trial on ground that defendant's agent in trans-
   > action involved was necessary and material witness was prop-
   > erly denied, where fact that he could not be found at time of
   > trial was known to defendant, but no application for delay or
   > continuance because thereof was made or any intimation given
   > that his testimony was desired.

5. FRAUD—VIGILANCE IN DISCOVERING FRAUD NOT REQUIRED.
   > Person defrauded is not required to be vigilant in discovering
   > fraud.

6. SAME—WAIVER.
   > That plaintiff knew, when he signed renewal notes for pur-
   > chase price of corporate stock, that at least two representa-
   > tions made to him were false did not waive the fraud as
   > matter of law, where he did not learn of falsity of other
   > material representations until shortly before suit.

7. Same—Trial—Excessive Verdict.

 Testimony by plaintiff attaching fraud to earlier as well as later subscription for corporate stock justified trial court in submitting both transactions to jury, notwithstanding letter by plaintiff's counsel seeming to indicate that no fraud was claimed in earlier transaction.

Error to Menominee; Bell (Frank A.), J.  Submitted February 13, 1931.  (Docket No. 119, Calendar No. 35,439.)  Decided April 7, 1931.

Case by Carl A. Anderson against Frischkorn Real Estate Company, a Michigan corporation, for money paid for corporate stock upon fraudulent representations.  Judgment for plaintiff.  Defendant brings error.  Affirmed.

*Meredith P. Sawyer* and *George Barstow,* for plaintiff.

*Monaghan, Crowley, Reilley & Kellogg,* for defendant.

Clark, J.  The declaration avers rescission of subscriptions to purchase shares of capital stock of defendant, and is for recovery back of the money paid.  Plaintiff had verdict and judgment.  Defendant brings error.

No witnesses were called by defendant.  There is evidence that subscriptions were induced by fraud of an agent of defendant.  Certificates for the shares were made, and have been held by defendant as collateral to plaintiff's purchase money notes.  The record is that, at the time of bringing this suit, the stock had no market value.

1. *Rescission.*  It was upon plaintiff before suit to restore, or offer to restore, whatever of value he had received, that he might thus by his own act have

legal right and title to the money in the hands of defendant and thus have right to recover at law on the theory that the contract had been rescinded. *Witte* v. *Hobolth,* 224 Mich. 286. Plaintiff had nothing to restore except such interest or right as he may have had in the shares, certificates for which were held by defendant, as stated. *Stowe* v. *Mather,* 247 Mich. 329. Counsel for plaintiff argue that in these circumstances, defendant then having the certificates, an offer to restore them was not necessary, citing 14 C. J. pp. 597, 598, and cases there cited. And they urge, too, that, as the stock was without value, an offer before suit to restore the certificates was not required, and it is this question we consider.

It was upon plaintiff before suit, as stated, to restore, or offer to restore, whatever "of value" he had received. If he had received something of no value, his failure to restore it worked no prejudice. Counsel for defendant contend the record is not conclusive that the stock had no market value, because there is some evidence of the company's having or owning some property, but such evidence, without a further showing of some substantial excess of assets over liabilities to creditors, has no tendency to impair the direct and positive evidence that the stock had no market value. It is also urged "no market value" is not equivalent to "no value." The words market value must be taken in the sense used. *Missouri, etc., R. Co.* v. *Crews,* 54 Tex. Civ. App. 548 (120 S. W. 1110). The words value and market value are commonly used interchangeably as equivalents of actual value. *Southern Traction Co.* v. *Hulbert* (Tex.), 177 S. W. 551; 38 C. J. p. 1266. The trial judge rightly accepted the record as showing that the stock at the time of bringing suit was

of no value. And, in this regard, we are in accord with his conclusion:

"The testimony is undisputed that at the time the suit was brought and for some time prior thereto, the stock had no market value. It is the common experience, of that part of mankind which deals in stocks, that 'no market value' means 'nothing of value'; and that the hope that the stock which has no market value will be worth something some day does not remove it from the no value class today. If this can be accepted as a legal conclusion, and I think it can, then there was nothing to return and the bringing of the suit was a sufficient disaffirmance of the contract. *Pangborn* v. *Ruemenapp,* 74 Mich. 572, cited with approval in *Joslin* v. *Noret,* 224 Mich. 240, 245."

2. *Motion for New Trial.* This question relates to having the testimony of defendant's agent Early, who sold the stock to plaintiff. We approve the disposition of the matter by the trial judge, who states the reason urged:

"That defendant, after diligent search, was unable to locate the witness Early so as to take his testimony or produce him at the trial as a witness, and that his whereabouts are now known and he can now be produced as a witness, and that, as appears from his affidavit attached to the motion, he will deny all the charges made against him by plaintiff, thus making a different result probable,"

and the decision:

"The witness Early was not produced and the affidavits show that with the effort made the defendant could not locate him. This effort consisted, according to the showing made, of writing three or four letters to persons who might know his address because they had known him when he was in Detroit,

some of which were never answered and the rest of which gave no information. No subpœna was put into the hands of officers nor is there any showing that the effort to locate the witness was any more zealous.

"The fact that the witness could not be found was known to defendant at all times after the suit was commenced until it was tried and there was no application for delay or continuance because of it nor any intimation at the trial that the testimony was desired.

"The case was tried on the legal defense    *    *    *. It is true that the plaintiff's claims were denied by the defendant, but there was no effort to meet them on the facts nor any showing that the witness who knew the facts was desired as a witness.

"To grant a new trial now on the theory that Mr. Early was a necessary and material witness would be to reward the defendant for its own laches and permit it to come in and try its case on a new and different theory from that on which it stood at the time of the trial."

3. *Waiver.* The plaintiff was not required to be vigilant in discovering the fraud. The record shows many false and material representations made to plaintiff by defendant's agent. There is evidence, perhaps undisputed, that at least two of the representations were known by plaintiff to be false when he signed renewal notes. If this were all there was of the case, plaintiff might, perhaps, be held to have waived right to rescind. But there is evidence that with respect to other material representations plaintiff did not learn of their falsity and of the fraud until shortly before suit, and until after he had retained counsel. There was delay by correspondence and attempted negotiations for compromise. The trial judge, on this record, could not find waiver as a matter of law. He gave defendant

as favorable treatment as it was entitled to when he submitted the question to the jury in a charge, in which, it may be noted, no error is claimed.

4. *Excessive Verdict.* Defendant contends that the verdict is excessive as including amount paid on first subscription for the reason that there is no evidence of fraud as to such subscription for stock, and stresses language relative thereto in a letter by plaintiff's counsel. Plaintiff's testimony, however, does not support such construction of the letter of his counsel, but attaches the fraud to the earlier and as well the later subscription. There was nothing for the trial judge to do but.to submit the matter to the jury, as he did.

The assignments urged here present no reversible error.

Affirmed.

BUTZEL, C. J., and WIEST, MCDONALD, POTTER, SHARPE, and NORTH, JJ., concurred. FEAD, J., did not sit.