## HUGLIN et al. v. H. M. BYLLESBY & CO.
## No. 9819.

Circuit Court of Appeals, Eighth Circuit.

July 19, 1934.

William L. Hassett, of Des Moines, Iowa, for appellants.

Donald Evans, of Des Moines, Iowa (R. M. Campbell and J. R. Clerkin, both of Chicago, Ill., on the brief), for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge.

This appeal presents the record in three cases which were consolidated for trial in the court below. In each of the actions the plaintiff alleged that the defendant H. M. Byllesby & Co., a foreign corporation, engaged in business as a dealer in securities, and authorized to do business in Iowa, had sold to the plaintiff certain shares of stock in the defendant corporation, but that the sale was void because it was in contravention of the Iowa statutes, and the prayer was for the recovery of the purchase price, together with costs and an attorney's fee.

The Iowa Securities Law (Code of Iowa, 1931, §§ 8581-c1 to 8581-c27) relates to the sale of certain kinds of stocks, bonds, and other securities. By section 8581-c6, it is provided that no such securities shall be sold in Iowa, unless they shall have been registered by notification or by qualification, as defined in other portions of the statute or unless the securities are of a class, or are sold in a transaction, excepted from the operation of the law. A portion of section 8581-c18, provides as follows: "Every sale or contract for sale made in violation of any of the provisions of this chapter shall be

voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have personally participated in making such sales and at the time knew of such violations shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller in person or in open court of the securities sold or of the contract made for the full amount paid by such purchaser, together with all taxable court costs and reasonable attorney's fees in any action or tender under this section."

The statute provides for a registration by notification by the filing of a statement with the Secretary of State, containing designated items of information. All securities which are required to be registered before being sold, but which are not entitled to registration by notification, are required to be registered by qualification. As to such securities, an application for their qualification must be filed with the Secretary of State, and the Secretary may require a further statement relating to the security and its issue. The Secretary of State is authorized to examine the application and to record the registration of the security.

Each of the plaintiff's petitions alleged that at the time of the respective sales, the securities were not qualified or registered as required by this statute, and alleged that the plaintiff would "tender in open court the securities above described and received by him in connection with the above pretended sale, along with all dividends in connection therewith and received by the plaintiff." The answers of the defendant admitted that the defendant was a foreign corporation authorized to transact business in Iowa, but denied generally the other allegations of the petitions, and alleged that the plaintiffs, prior to bringing their actions, had sold to the defendant the shares which they had purchased and had waived the right to recover the purchase price. Other special defenses were alleged in the cases of Huglin and Grant. The cases were tried to the court, in pursuance of a stipulation of the parties waiving a jury trial, and a judgment was entered for the defendant. The plaintiffs have appealed.

■ At the hearing on this appeal the appellants suggested a diminution of the record and asked leave to supply a copy of a nunc pro tunc order made by the trial court at a term subsequent to that at which the judgment was entered. There was no challenge of the fact that the proposed order was made, nor of the basis on which the court acted in making it; but it is suggested by the appellee that it was made too late, and that it is inconsistent with prior findings. The original opinion and judgment filed on June 21, 1933, set forth a summary of the pleadings, stated facts which the evidence established, and this was followed by conclusions of law, and an entry of judgment. The nunc pro tunc order is dated February 5, 1934, and states that it was entered after notice and a hearing. It recites that the cases were submitted to the court on June 2, 1933, upon a stipulation of facts, a jury trial having been waived and that the court in entering its former opinion and judgment had found and considered all the facts so stipulated although these facts were not set out at length in the opinion and judgment. The order then stated that the present order and judgment is now entered nunc pro tunc as of June 21, 1933, and stated that the court finds the facts as follows. The findings of fact then proceed at considerable length and are followed by conclusions of law and the same form of judgment as in the original order which included a general finding for the defendant. In conclusion the court again stated that this order, finding of fact, conclusion of law, and judgment is entered nunc pro tunc as of the 21st of June, 1933. The facts thus recited bring this case within the rules announced in Ætna Insurance Co. v. Boon, 95 U. S. 117, 126, 24 L. Ed. 395, wherein it was held that when a court had tried a case without a jury, and had filed an opinion containing its findings of fact and conclusions of law at the time of entering a judgment, although there was no formal finding of facts, the court at a succeeding term, after notice, could order that a special finding and conclusions of law conformable to the opinion should be entered nunc pro tunc as a part of the record of the term when the judgment was rendered, and that the special finding thereby became a part of the record in the case. The court said: "Generally, it may be admitted that judgments cannot be amended after the term at which they were rendered, except as to defects or matters of form; but every court of record has power to amend its records, so as to make them conform to and exhibit the truth. Ordinarily, there must be something to amend by; but that may be the judge's minutes or notes, not themselves records, or any thing that satisfactorily shows what the truth was."

There is nothing in the present case to controvert the finding of the trial court that it had previously found all of the facts stipulated at the trial, or to show that the findings in the nunc pro tunc order made any substantial departure from the facts which had been stipulated and which the court had found. The motion to enlarge the record is therefore sustained.

■ Coming to consider the assignments of error in the light of these findings, the chief contention of appellants is that the findings do not support the judgment. By the provisions of section 700 of the Revised Statutes (28 U. S. Code § 875 [28 USCA § 875]), this question is reviewable in this court, if the findings are special. Norris v. Jackson, 9 Wall. 125, 128, 19 L. Ed. 608; Tyng v. Grinnell, Collector, 92 U. S. 467, 469, 23 L. Ed. 733; Stanley v. Supervisors of Albany, 121 U. S. 535, 547, 7 S. Ct. 1234, 30 L. Ed. 1000; Lewellyn v. Electric Reduction Co., 275 U. S. 243, 248, 48 S. Ct. 63, 72 L. Ed. 262; Valenti v. Prudential Insurance Co., 71 F.(2d) 229, a decision by this court filed May 1, 1934.

The court found that each of the plaintiffs had purchased the number of shares of class A or class B common stock in the defendant corporation, as had been alleged in the petitions, and that this stock was not qualified for sale in the state of Iowa at the times of sale. It was also found that each plaintiff had thereafter sold the shares he had purchased to the defendant, but that none of the plaintiffs knew that the stock was not qualified for sale by the defendant either when he purchased it from or sold it to the defendant.

■ The court also found that each of the plaintiffs had tendered to the defendant in open court, at the date of the trial, the same number of shares of stock which he had purchased from the defendant, demanding at the same time a return of the original purchase price which he had paid to defendant, less the sum that the plaintiff had received from its sale, and less the dividends paid to him, and less the interest accrued on such payments and dividends; but the court also found that none of the plaintiffs owned the shares so tendered to the defendant, until after the commencement of his action. The court was of the opinion, and found as a matter of law, that the plaintiffs could not recover unless they had tendered to the defendant "the securities sold" by the defendant to them. The appellee contends that the statute giving the remedy sought by the plaintiffs is penal in its nature, and should be strictly construed in favor of the seller, and that no recovery can be had except after tender of the identical certificate of shares purchased. The appellants claim that this is an erroneous construction of the statute, as the statute does not require that the identical certificate of shares of corporate stock purchased must be tendered, provided there is a tender of the same number of shares of the same kind. No decision of the Supreme Court of Iowa has been cited which interprets the language in question. In the ordinary action by a purchaser against a seller for a rescission of a sale of personal property, the rule is that the purchaser must offer to return the property which he received, before he may have a rescission. Andrews v. Hensler, 6 Wall. 254, 258, 18 L. Ed. 737; Neblett v. Macfarland, 92 U. S. 101, 103, 23 L. Ed. 471; Benjamin on Sales (9th Ed.) 503; 2 Mechem on Sales, § 914; 3 Black on Rescission (2d Ed.) §§ 616, 617.

In Andrews v. Hensler, supra, the Supreme Court of the United States stated the general principle in these words: "The rule that he who seeks to rescind a contract of sale, must first offer to return the property received, and place the other party in the position he formerly occupied, so far as practicable, prevails equally at the civil and the common law. It is a rule founded in natural justice, and requires that the offer shall be made by the purchaser to his vendor upon the discovery of the defects for which the rescission is asked."

This rule has been relaxed in some cases where an offer was made to return that which was equivalent to what was received. See Colby v. Stevens, 38 N. H. 191, 195; Basye v. Paola Refining Co., 79 Kan. 755, 757, 101 P. 658, 25 L. R. A. (N. S.) 1302, 131 Am. St. Rep. 346; Wright v. Dickinson, 67 Mich. 580, 589, 35 N. W. 164, 11 Am. St. Rep. 602; 3 Black on Rescission (2d Ed.) § 627.

■ Without undertaking to determine whether, in an action under section 8581-c18 of the Iowa Securities Law, by a purchaser to recover the purchase price paid for securities sold to him in violation of that act, he must tender to the seller the identical securities sold to him, it is a reasonable requirement that he must at least make a tender of securities which are equivalent to those purchased. In Whittier v. Electric Refrigeration Corporation, 246 Mich. 247, 248, 224 N. W. 447, the court in considering a

somewhat similar statute held that the purchaser of shares of stock might tender equivalent stock, when he had sold the stock that he had purchased before he discovered his right to have a return of his money. In so holding the court used this language: "The statute (section 20, Act No. 220, Public Acts 1923) adopts, and this court, in Joslin v. Noret, 224 Mich. 240, 194 N. W. 983, applied, the common-law rule that, upon rescission, there must be return made so as to place defendant in statu quo. Defendant has plaintiff's money. Plaintiff tendered back the equivalent of all he had received, and it was no defense to claim that the shares tendered were not the identical shares sold him. American Alkali Co. v. Salom (C. C. A.) 131 F. 46 (certiorari denied 196 U. S. 641, 25 S. Ct. 796, 49 L. Ed. 631) ; Schultz v. O'Rourke, 18 Mont. 418, 45 P. 634."

In Mayo v. Knowlton, 134 N. Y. 250, 254, 31 N. E. 985, 986, in an action based on a rescission of a contract for purchase of shares of stock, the defense was made that the identical shares purchased had not been tendered to the seller; but the court found that the stock tendered was equal in value to that purchased and that the tender was not invalid on that ground. The court said: "But the stock had no earmark. One share was the same as another, and could not be identified or distinguished therefrom. Each share represented an equal interest in the property and assets of the corporation; so that, if the defendant had accepted the 4,000 shares of the stock tendered to him, he would have had the same interest in the property and assets of the company as that sold by him to the plaintiff. Horton v. Morgan, 19 N. Y. 170–173 [75 Am. Dec. 311]. True, a new company had been organized, and the assets of the old had been transferred to the new company. The plaintiff had converted his old stock into the stock of the new company, but it is not seen how this should deprive him of his right to rescind, provided he is able to do so. He found stock of the old company which had not as yet been converted, and borrowed it for the purpose of making the tender. Having borrowed it for that purpose, he had the right to transfer it to the defendant, and give him a good title thereto, thus restoring him to all the rights and property parted with. We fail to see any reason why this may not be done."

In Schultz v. O'Rourke, 18 Mont. 418, 431, 45 P. 634, 638, where a similar situation arose, Judge Hunt, in writing the opinion of the court, said: "We cannot uphold the contention of appellant that plaintiff had lost her right to reimbursement by having transferred 25 shares of the stock to her husband before the year had expired. One share of stock was as good as another. She was evidently willing to transfer 2,500 shares, and there is nothing to show that she was not fully able to transfer 2,500 shares, as required by the contract, the instant that defendant would comply with his part of the agreement. Eames v. Haver, 111 Cal. 401, 43 P. 1120. The identical shares originally made over to her were not necessarily the only shares which she could return to defendant. As said, one share was as good as another, and represented the same interest in the property. Colby v. Stevens, 38 N. H. 191; Thompson v. Lyon, 40 W. Va. 87, 20 S. E. 812; Park v. Wiley, 67 Ala. 310."

The appellants contend that the tender which was made at the trial was of shares of stock which were equivalent in value to those purchased.

The findings disclose that the plaintiff Huglin on March 27, 1930, received his certificate for 100 shares of class A common stock in the defendant corporation, and that on June 2, 1933, he made the tender to the defendant of certificate C A 51267 for 89 shares of class A common stock of the defendant, and of certificate C A 1179 for 11 shares of such stock. The plaintiff Bell on March 27, 1930, placed an order with the defendant for the purchase of 50 shares of class A common stock and of 50 shares of class B common stock in the defendant corporation, and the certificates for this stock were delivered to him. Bell tendered to the defendant on June 2, 1933, 50 shares of class A common stock and 50 shares of class B common stock. The plaintiff Grant purchased 35 shares of class B common stock in the defendant corporation on April 24, 1930, and on April 25, 1930, purchased 55 shares of class A common stock in the defendant corporation and received the certificates therefor on April 30, 1930. The plaintiff Grant made his tender to the defendant also on June 2, 1933, of 55 shares of class A common stock and of 35 shares of class B common stock in the defendant corporation. But, as has been noted, the plaintiff Huglin, on February 11, 1931, had sold to the defendant the stock he had bought from the defendant, the plaintiff Bell on June 2, 1931, had sold to the defendant the shares he had bought from the defendant, and the plain-

tiff Grant on October 16, 1931, had sold to the defendant the shares he had bought from the defendant, and none of the plaintiffs owned the shares tendered until after these suits were begun in March, 1932.

The findings show that many important amendments were made on March 7, 1932, to the articles of incorporation of the defendant. These amendments authorized an increase of the preferred shares from 175,000 to 1,000,000. They increased the preference of the preferred stock dividends over class A and class B common stock dividends, from $1.50 to $2 per share per annum, payable quarterly. They increased the preference of the preferred stock over class A and class B common stock to the assets of the defendant in case of its liquidation or dissolution of $20 per share, plus an amount equal to all unpaid cumulative dividends, to $25 per share, plus an amount equal to all unpaid dividends. They eliminated the right of holders of preferred stock to convert such stock into class A common. They added provisions as to how surplus and net profits should be defined in case of a reduction of the defendant's capital. They authorized the board of directors of the defendant to set aside reserve accounts out of any capital surplus, or surplus created by a reduction of the capital stock, against which might be charged losses caused by the sale of securities or other property, or losses caused by a diminution in value of securities or property not realized by a sale thereof, instead of the former method of charging such losses or diminution against current income or profits. They authorized the reduction of the defendant's capital, by reducing the amount of capital represented by the class A and class B common stock from $22,884,831 to $9,112,560 of which $4,845,740 should be represented by the class A common stock and $4,266,820 should be represented by the class B common stock. The findings do not set forth the articles of incorporation, either as they existed before or after these changes were made. The findings do not disclose whether the shares tendered to the defendant were in existence before or after the amendments were made. Neither do the findings disclose to what extent, if any, the authorizations allowed by the amendments have been exercised. The trial court did not make any finding of the value of the shares tendered as compared to the value of the shares purchased by the plaintiffs, nor was any finding made that the shares tendered and the shares purchased were in any manner equivalent.

In Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 126, 22 S. Ct. 55, 58, 46 L. Ed. 113, the court said:

"The result of the decisions under the statutes providing for a waiver of trial by jury, and the proceedings on a trial by the court (Rev. Stat. §§ 649, 700 [28 USCA §§ 773, 875]) is that when there are special findings they must be findings of what are termed ultimate facts, and not the evidence from which such facts might be but are not found. If, therefore, an agreed statement contains certain facts of that nature, and in addition thereto and as part of such statement there are other facts of an evidential character only, from which a material ultimate fact might be inferred, but which is not agreed upon or found, we cannot find it, and we cannot decide the case on the ultimate facts agreed upon without reference to such other facts. In such case we must be limited to the general finding by the court. We are so limited because the agreed statement is not a compliance with the statute.

"As to what is necessary in special findings or in an agreed statement of facts, the authorities are decisive. It is held that upon a trial by the court, if special findings are made, they must be not a mere report of the evidence, but a finding of those ultimate facts on which the law must determine the rights of the parties; and if the finding of facts be general, only such rulings of the court in the progress of the trial can be reviewed as are presented by a bill of exceptions; and in such case the bill cannot be used to bring up the whole testimony for review, any more than in a trial by jury. Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608."

The court also cited the case of Lehnen v. Dickson, 148 U. S. 71, 77, 13 S. Ct. 481, 37 L. Ed. 373, and said that that case "decided that any mere recital of the testimony, whether in the opinion of the court or in a bill of exceptions, could not be deemed a special finding of facts within the scope of the statute; and if there were a general finding and no agreed statement of facts, the court must accept that finding as conclusive, and limit its inquiry to the sufficiency of the complaint and to the rulings, if any be preserved on questions of law arising during the trial. The court, in the opinion written by Mr. Justice Brewer, said: 'But the burden of the statute is not thrown off simply because the witnesses do not contradict each other, and there is no conflict in the testimony. It may be an easy thing in one case for this court, when the testi-

mony consists simply of deeds, mortgages, or other written instruments, to make a satisfactory finding of the facts; and in another it may be difficult when the testimony is largely in parol and the witnesses directly contradict each other. But the rule of the statute is of universal application. It is not relaxed in one case because of the ease in determining the facts or rigorously enforced in another because of the difficulty in such determination. The duty of finding the facts is placed upon the trial court. We have no authority to examine the testimony in any case, and from it make a finding of the ultimate facts.'" And in conclusion the court said: "We now hold, in accordance with the authorities, that an agreed statement of facts which is so defective as to present, in addition to certain ultimate facts, other and evidential facts upon which a material ultimate fact might have been, but which was not, agreed upon or found, cannot be regarded even as a substantial compliance with the statute. Being concluded by the general finding of the issues in favor of defendant, there is no error in the record, and the judgment must be affirmed."

This court recently had occasion to consider the same question in the case of Perry v. Wiggins, 57 F.(2d) 622, 623, and announced the rule as follows:

"Where the parties make and file a stipulation of the ultimate facts, or the court makes specific findings of the ultimate facts, then, on appeal, the sufficiency of such facts to support the judgment presents a question of law which is reviewable, even though no exceptions were saved. Seeberger v. Schlesinger, 152 U. S. 581, 14 S. Ct. 729, 38 L. Ed. 560; Abernathy v. Oklahoma (C. C. A. 8th) 31 F.(2d) 547; Tatum v. Davis (C. C. A. 8th) 283 F. 948; Wilson v. Merchants' L. & T. Co., 183 U. S. 121, 22 S. Ct. 55, 46 L. Ed. 113; United States Tr. Co. v. New Mexico, 183 U. S. 535, 22 S. Ct. 172, 46 L. Ed. 315; White v. United States (C. C. A. 10th) 48 F.(2d) 178, 179.

"Such a stipulation as to facts, or such special findings must be of ultimate facts, as distinguished from the evidentiary facts. Wilson v. Merchants' L. & T. Co., supra; United States Trust Co. v. New Mexico, supra; United States v. Sioux City Stock Yards (C. C. A. 8th) 167 F. 126.

"If the agreed facts in this case, or the special findings made by the lower court, are ultimate facts, then the record presents questions for review. If, however, the agreed facts and the special findings of fact are merely evidentiary in their nature, they may not be examined on this record for the purpose of determining whether the evidentiary facts support the judgment rendered, because no exceptions were saved in the record. The practice is settled by controlling precedents of the Supreme Court of the United States. Wayne County v. Kennicott, 103 U. S. 554, 26 L. Ed. 486; Wilson v. Merchants' L. & T. Co., 183 U. S. 121, 22 S. Ct. 55, 58, 46 L. Ed. 113; United States Trust Co. v. New Mexico, 183 U. S. 535, 22 S. Ct. 172, 174, 46 L. Ed. 315; Tatum v. Davis (C. C. A. 8th) 283 F. 948; Abernathy v. Oklahoma (C. C. A. 8th) 31 F.(2d) 547; White v. United States (C. C. A. 10th) 48 F.(2d) 178, 179."

The present case is one in which it was a material ultimate fact whether the plaintiffs had tendered to the defendant certificates representing shares of stock which were equivalent to the shares which the plaintiffs had purchased, and this fact was not found by the court. The court reported some evidentiary facts as to the ownership of these respective shares, and as to changes made in the articles of incorporation. The difficulty thus presented by the absence of a finding of value is similar in principle to the omission of findings of fact in the case of Wilson v. Merchants' Loan & Trust Co., supra, as to which the court said:

"The difficulty we meet, which prevents the decision of the case from resting on the statement of facts, lies in the omission therefrom of any finding or agreement upon the question of fact whether the pledgor had or had not consented to the change; and instead of any such finding or agreement there is placed in the statement certain correspondence from which, together with other facts stated, an inference of consent or perhaps ratification might be drawn, but is not found or agreed upon, thus leaving the ultimate fact of consent or nonconsent a matter of inference, and an inference of fact, and not of law; and this is a material fact arising upon the statement as agreed upon.

"Neither is there any finding upon the question of the consent of the assignee of the pledgor, to the substitution of the stock, or upon the question of ratification by him. There are facts from which the consent or ratification might be inferred, or the contrary, but there is no finding of any ultimate fact regarding the matter."

Applying the principles of these cases, it must be held that because of the absence of a finding as an ultimate and necessary

fact that these shares were equivalent, the general finding for the defendant is conclusive on the sufficiency of the findings to support the judgment.

■ The only other assignments of error requiring notice allege errors of the trial court in making some of the findings, and in failing to make certain conclusions of law. As the record does not show any request or motion by appellants relating to findings of fact or conclusions of law, these assignments of error present nothing for review. Eastman Kodak Co. v. Gray (May 21, 1934) 54 S. Ct. 722, 78 L. Ed. 1291; Norris v. Jackson, 9 Wall. 125, 128, 19 L. Ed. 608; Wear v. Imperial Window Glass Co. (C. C. A.) 224 F. 60, 63; First Nat. Bank v. Litteer (C. C. A.) 10 F.(2d) 447, 448; Akre v. Liberty State Bank (C. C. A.) 24 F.(2d) 816, 818; Federal Intermediate Credit Bank v. L'Herisson (C. C. A.) 33 F.(2d) 841, 843; Buechle v. Montgomery (C. C. A.) 45 F.(2d) 987, 988.

The judgments will be affirmed.